IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**JONATHAN ESCOTO-LUGO,**

*Petitioner,*

v.

**UNITED STATES OF AMERICA,**

*Respondent.*

**CIVIL NO. 17-1620 (DRD)**
**(Related to Cr. No. 15-113-7 (DRD)**

**OPINION AND ORDER**

Pending before the Court is Petitioner, Jonathan Escoto-Lugo's *Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody* (Docket No. 1). The Government filed their *Opposition*. *See* Docket No. 11. For the reasons stated herein, the Court **DENIES** Petitioner's *Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody*. *See* Docket No. 1.

**II.     FACTUAL AND PROCEDURAL BACKGROUND**

On February 11, 2015, a Grand Jury issued an *Indictment* charging the Petitioner and twelve (12) other defendants for aiding and abetting each other and diverse persons, to import into the United States from a place outside thereof, five (5) kilograms or more of cocaine, a Schedule II Narcotic Controlled Substance, all in violation of 21 U.S.C. § 952 (hereinafter, "Count One"); .conspiracy to import controlled substances as described in Count One, all in violation of 21 U.S.C. § 963 (hereinafter, "Count Two"); aiding and abetting in the possession with the intent to distribute a controlled substance, that is, cocaine, on board a vessel subject to the jurisdiction of the United States as defined in 46 U.S.C. §§ 70502(c)(1)(D) and (F)(iii), all in violation of 46

U.S.C. §§ 70503(a)(1), 70404(b)(1) and 70506(a) (hereinafter "Count Three"); and conspiracy to possess with intent to distribute a controlled substance, that is, cocaine, on board a vessel subject to the jurisdiction of the United States as defined in 46 U.S.C. §§ 70502(c)(1)(D) and (F)(iii), all in violation of 46 U.S.C. §§ 70503(a)(1), 70404(b)(1) and 70506(a) and (b) (hereinafter, "Count Four"). *See Indictment*, Docket No. 26 in Related Criminal Case No. 15-CR-113 (DRD).

The Petitioner ultimately pleaded guilty as to Count Two of the Indictment. *See* Docket No. 253 in Related Criminal Case No. 15-CR-113 (DRD). Accordingly, on June 6, 2016, the Petitioner was sentenced to sixty-three (63) months of imprisonment as to Count Two and five (5) years of supervised release thereafter. Counts One, Three and Four were subsequently dismissed upon sentencing. *See* Docket Nos. 349 & 350. The Court notes that "[a]t the sentencing hearing, in light of Escoto-Lugo's safety valve, both parties recommended a further reduced total offense level of 26, with a sentencing range of 63-78 months. Specifically, the parties recommended a sentence of 63 months, which is the lower end of the guidelines range for the aforementioned total offense level." Docket No. 11 at 2-3. The Petitioner was ultimately sentenced to the lower end of the sentencing guideline as he qualified for a safety valve exception.

Notwithstanding, on May 11, 2017, the Petitioner filed a *Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody* (Docket No. 1) wherein, he claims that counsel was ineffective for failing to file a notice of appeal as to his conviction and sentence. In turn, the Government submits that the Petitioner's claim "lacks merit, and is belied by the record, and, thus, should be denied." Docket No. 11 at 1.

For the reasons articulated below, the Court **DENIES** the Petitioner's *Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody*. *See* Docket No. 1.

## II.  LEGAL ANALYSIS

Pursuant to 28 U.S.C. § 2255, a federal prisoner may petition to vacate, set aside, or correct his or her sentence by showing that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." However, as held by the First Circuit, relief under § 2255 is only available in extraordinary circumstances, to wit:

> While the statutory language is rather general the Supreme Court has narrowly confined the scope and availability of collateral attack for claims that do not allege constitutional or jurisdictional errors. Such claims are properly brought under § 2255 only if he claimed error is 'a fundamental defect which inherently results in a complete miscarriage of justice' or 'an omission inconsistent with the rudimentary demands of fair procedure'. *Hill v. United States*, 368 U.S. 424, 428, 82 S.Ct. 468, 471 (1962). The error must 'resent exceptional circumstances wher the need for the remedy afforded by the writ of *habeas corpus* is apparent.' *Id.* (quoting *Bowen v. Johnston*, 306 U.S. 19, 27, 59 S.Ct. 442, 446, 83 L.Ed. 455 (1939); *see Fasano v. Hall,* 615 F.2d 555, 557 (1st Cir.) *cert. denied*, 449 U.S. 867, 101 S.Ct. 201, 66 L.Ed.2d 86 (1980). Errors warranting a reversal on direct appeal will not necessarily support a collateral attack. *See United States v. Addonizio*, 442 U.S. 178, 184-185, 99 S.Ct. 2235, 2239-40, 60 L.Ed.2d 805 (1979)."

*Knight v. United States*, 37 F.3d 769, 772-73 (1st Cir. 1994).

### A.  *Ineffective Assistance of Counsel*

The Petitioner asserts that counsel was ineffective as "[c]ounsel inexplicably failed to challenge Petitioner's 63 months sentence and conviction, and counsel instead, deliberately abandoned [him]." Docket No. 1-1 at 3. The Court disagrees and explains. In order to succeed on

a claim of ineffective assistance of counsel under 28 U.S.C. § 2255, Petitioner has the burden of showing that (1) counsel's performance fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. *Padilla v. Kentucky*, 559 U.S. 356, 366 (2010) (quoting *Strickland v. Washington,* 466, U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)); *see Argencourt v. United States*, 78 F.3d 14, 16 (1st Cir. 1996); *Scarpa v. Dubois*, 38 F.3d 1, 8 (1st Cir. 1994); *Lema*, 987 F.2d at 51; *López-Nieves v. United States*, 917 F.2d 645, 648 (1st Cir. 1990) (citing *Strickland*, 466 U.S. at 687).  "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 687–88, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984). However, it has been recognized that "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690.

There is no doubt that *Strickland* also applies to representations outside of the trial setting, which would include plea bargains, sentence and appeal. *See Missouri v. Frye*, 132 S. Ct. 1399, 1408-10, 182 L. Ed. 2d 379 (2012); *Lafler v. Cooper*, 132 S. Ct. 1376, 182 L. Ed. 2d 398 (2012); *Hill v. Lockhart*, 474 U.S. 52, 57 (1985); *Bonneau v. United States*, 961 F.2d 17, 20-22 (1st Cir. 1992); *United States v. Tajeddini*, 945 F.2d 458, 468-69 (1st Cir. 1991)(abrogated on other grounds by *Roe v. Flores-Ortega*, 528 U.S. 470 (2000)); cf. *Panzardi-Álvarez v. United States*, 879 F.2d 975, 982 (1st Cir. 1989); *López-Torres v. United States*, 876 F.2d 4, 5 (1st Cir. 1989) (abrogated on other grounds by *Bonneau v. United States*, 961 F.2d 17 (1st Cir. 1992)).

In *Roe v. Flores-Ortega*, 528 U.S. 470, 480 (2000), the Supreme Court held that "… counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Roe* provided the rules in evaluation of an ineffective assistance of counsel based on counsel's failure to file an appeal. The Supreme Court further stressed that:

> Although not determinative, a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because <u>a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings.</u> Even in cases when the defendant pleads guilty, the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights. Only by considering all relevant factors in a given case can a court properly determine whether a rational defendant would have desired an appeal or that the particular defendant sufficiently demonstrated to counsel an interest in an appeal. *Id.* (Emphasis ours).

In order to satisfy the second prong of the *Strickland* test in the context of a guilty plea, the petitioner must "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *See Hill*, 474 U.S. at 59. However, as to presentence waivers of appellate rights, the First Circuit explains that:

> "[P]resentence waivers of appellate rights are enforceable if they meet certain criteria. *United States v. Teeter*, 257 F.3d 14, 23 (1st Cir. 2001). First, we require that the defendant enter into the waiver "knowingly and voluntarily." *Id.* at 24–25; accord *United States v. Torres–Oliveras*, 583 F.3d 37, 40 (1st Cir.2009). In examining whether the defendant knowingly and voluntarily waived his appellate rights, the text of the written plea agreement and the change-of-plea colloquy are of critical importance. *Teeter*, 257 F.3d at 24. We evaluate whether the written plea agreement "contains a clear statement elucidating the waiver and delineating its scope," and whether the district court "inquire[d] specifically at the change-of-plea hearing into any waiver of appellate rights," as required by Rule

5

11(b)(1)(N). *Id.* Second, even if the waiver is knowing and voluntary, we retain discretion not to enforce the waiver if it would result in a "miscarriage of justice." *Id*. at 25; accord *United States v. Torres–Oliveras*, 583 F.3d 37, 42 (1st Cir. 2009)." *Sotirion v. United States*, 617 F.3d 27, 33 (1st Cir. 2010).

As to *Strickland*'s second prong, in cases where a legal representative fails to file an appeal, the *Flores* Supreme Court established that "to show prejudice in these circumstances, a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id.* at 484 ("counsel's deficient performance must actually cause the forfeiture of the defendant's appeal. If the defendant cannot demonstrate that, but for counsel's deficient performance, he would have appealed, counsel's deficient performance has not deprived him of anything, and he is not entitled to relief."). If a Defendant satisfies this threshold, prejudice should be presumed "with no further showing from the defendant of the merits of his underlying claims". *Id.* On the other hand, the Court further notes that recently, in *Garza v. Idaho*, the Supreme Court determined that said "presumption of prejudice" applied in cases where a defendant has pleaded guilty and executed an "appeal waiver". *See Garza v. Idaho*, 139 S. Ct. 738, 742, 203 L. Ed. 2d 77 (2019); *see also*, *Rojas-Medina v. United States*, 924 F.3d 9, 16 (1st Cir. 2019).

Likewise, the First Circuit has concluded that "plea-agreement waivers of the right to appeal from imposed sentences are presumptively valid (if knowing and voluntary), but are subject to a general exception under which the court of appeals retains inherent power to relieve the defendant of the waiver, albeit on the terms that are just to the government, where a miscarriage of justice occurs." *Id.* It further stressed that such exception "will be applied sparingly and without undue generosity." *Id.* at 26.

Moreover, "[w]hen mulling whether a miscarriage of justice is in prospect, we [the First Circuit] consider, among other things, the clarity of the alleged error, its character and gravity, its impact on the defendant, any possible prejudice to the government, and the extent to which the defendant acquiesced in the result." *United States v. Gil-Quezada*, 445 F.3d 33, 37 (1st Cir. 2006). Most recently, the Supreme Court found that "said presumption of prejudice" applied in cases where a defendant has pleaded guilty and executed within the Plea Agreement an "appeal waiver".

As previously referenced, under the first prong of the *Strickland* test, the Supreme Court in *Flores* distinguished between two scenarios. First, instances where a defendant clearly requested counsel to file an appeal and, second, situations wherein a defendant's wish to file a notice of appeal was not clearly conveyed to counsel. The Court finds that none of the above-mentioned scenarios are present in the case at bar.

Herein, Mr. Escoto-Lugo alleges that he "specifically asked his counsel to appeal his sentence. However, counsel failed to pursue the endeavor to which he was specifically requested. Thus, counsel's failure to appeal [] constitutes [a] constitutionally deficient performance." Docket No. 1-1 at 4. In turn, the Government asserts that "Escoto-Lugo's self-serving allegations are overly general and inherently incredible. Although he alleges to having specifically asked counsel to file an appeal, he fails to specify when he purportedly asked this of counsel." Docket No. 11 at 6.

In *Flores*, the Supreme Court held that "[t]o prove deficient performance, a defendant can rely on evidence that he sufficiently demonstrated to counsel his interest in an appeal." *Flores-Ortega,* 528 U.S. at 486. Yet, Petitioner fails to provide any sort of evidence that proves that he

7

sufficiently demonstrated to counsel his purported interest on appealing. On the contrary, the Court finds that the Petitioner's allegations are generic and totally lack any evidence or detail as to whether the request to appeal ever took place.[1] Mere allegations are insufficient to support Petitioner's contention that he actually instructed counsel to file a notice of appeal. Therefore, as the Petitioner's contention is unfounded, the Court moves on to the second scenario.

As previously discussed, upon the Court's determination that a defendant's wish to file an appeal was not clearly conveyed to counsel, the evaluation must turn into whether the legal representative complied with his duty to "consult", pursuant to the Supreme Court's decision in *Flores-Ortega, supra*. To that effect, the First Circuit recently explained that "the duty to consult is triggered either when a 'rational defendant would want to appeal' or when a 'particular defendant reasonably demonstrated to counsel that he was interested in appealing.'" *Rojas-Medina v. United States*, 924 F.3d 9, 16 (1st Cir. 2019)(internal citations omitted). As Petitioner's contentions are insufficient to provide a "reasonable" demonstration of his interest in filing an appeal, the Court must examine whether a "rational defendant wound want to appeal". However, as the Petitioner was sentenced to the lowest end of the sentencing guidelines, as a result of the application of the safety valve, the record does not support a situation where a "rational defendant would want to appeal" in the instant case.

---

[1] The Court notes that in *Garza*, the Supreme Court examined a § 2255 Petition in a context considerably similar to the instant case -failure to file a notice of appeal when a waiver of appeal had been dully executed-, the § 2255 Petition was substantiated by an affidavit and a record of communications between the defendant and counsel pertaining to the filing of the notice of appeal. *See Garza v. Idaho*, 139 S. Ct. 738, 743, 203 L. Ed. 2d 77 (2019). Certainly, this factual scenario is starkly different from the instant case where Petitioner -as highlighted above- did not only fail to include any evidence to support his allegations, but also failed to provide a single detail pertaining to the purported request to appeal.

First, the Government and the Petitioner agreed upon a *Plea Agreement* wherein the Petitioner agreed to plead guilty to Count Two of the Indictment while Counts One, Three and Four would be dismissed. *See* Docket No. 251 at 1 in Related Criminal Case No. 15-113 (DRD). As part of the agreement the sentence recommendation was,

> ". . . a sentence of 120 months, if the Defendant has a criminal history category I – IV. If the Defendant has a criminal history category of V – VI, the parties reserve the right to recommend the lower end of the applicable Guideline Sentencing Range for a total offense level of 28."

*Id.* at 4. Moreover, as part of the plea agreement, the Petitioner "knowingly and voluntarily waives the right to appeal the judgment and sentence in this case, provided that Defendant is sentenced in accordance with the terms and conditions set forth in the Sentence Recommendation provisions of his Plea Agreement." *Id.* As the safety valve exception was applied, the Petitioner was afforded the following adjustment,

> THE COURT: He arrives with an adjustment under 3D1.2 of three levels. He is then granted an adjustment for having complied with the safety valve. And he is also granted a minor participation in the criminal activity involved in this case. That's a two-point deduction and credit. And he also arrives with a three-level deduction for acceptance of responsibility. So he ends up at 26.
>
> THE PROBATION OFFICER: Yes.
>
> THE COURT: All right. He ends up at Level 26, with a sentencing range of 63 to 78 [months].
>
> MR. RIVERA [Petitioner's counsel]: Yes, Your Honor.
>
> THE COURT: And the Court, having read the presentence report and the plea and forfeiture agreement, the Court is convinced -- at this time that he has earned the minor -- the lowest level possible in the range that he has, which is criminal history one and offense level 26.
>
> MR. RIVERA: Yes, Your Honor. Thank you.

*Transcript of Proceedings: Sentencing Hearing*, Docket No. 416 at 3-4 in Related Criminal Case No. 15-113 (DRD). During the change of plea hearing, Mr. Escoto-Lugo, along with other codefendants, was individually inquired in great detail by the Court as to the elements related to Mr. Escoto-Lugo's guilty plea. First, the Petitioner was inquired as to counsel's representation as follows:

> THE COURT: Next. Are you satisfied with the services of your attorney Mr. Raymond Rivera?
> DEFENDANT ESCOTO LUGO: Yes, sir.

*Transcript of Proceedings: Change of Plea Hearing*, Docket No. 418 at 14-15 in Related Criminal Case No. 15-113 (DRD). He was further inquired as to consulting with counsel his guilty plea (*id.* at 15); as to "been furnished with a copy of the indictment containing the charges against [the Petitioner]" (*id.* at 16); as to discussing all charges in the indictment with counsel (*id.*); as to counsel providing the Petitioner the discovery (*id.* at 18); among others. He answered all questions in the affirmative. More importantly, the Court inquired Mr. Escoto-Lugo as to whether he was oriented as to the consequences of entering a guilty plea as follows:

> THE COURT: Sir, have you discussed with your attorney the potential consequences of making a plea and how many times have you met with your attorney as to the case in general and as to your potential plea?
> DEFENDANT ESCOTO-LUGO: Yes, sir. Nine times.
> THE COURT: And after nine, he said if you met with him and you were advised the consequences of making a plea. What is your answer?
> DEFENDANT ESCOTO-LUGO: Yes.

*Id.* at 19. Mr. Escoto-Lugo was advised by the Court as to the charge he was pleading guilty to and the consequences thereof as follows:

> THE COURT: So, gentlemen, these -- all of you, you are all pleading guilty to Count II. Count II -- listen to this very carefully because it's the same count. Count II states that you knowingly, intentionally, combined, conspired, and confederated and agreed with others to commit an offense under the law, which is Title 21, United

>States Code, Section 952, and that federal offense is to import into the United States from any place outside thereof five kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II narcotic controlled substance, all in violation to Title 21, United States Code, Section 963. So, knowingly and intentionally. Knowingly means an act of you, the defendant, each one of you, in which you were aware and you did not act through ignorance, mistake, or accident. It is an act done while conscious and aware. Willfully means that the act was committed voluntarily and purposely with specific intent to do something the law forbids. And intentionally means purposely and not by accident. Now, importing means bringing into the United States from a place outside thereof cocaine. Now, in this particular case, the boat had -- the vessel allegedly had 989 kilos of cocaine, according to the discovery that I think was distributed to all the counsel. Now, I ask all of you, do you understand the charge that you are about to accept?
>[ . . . ]
>THE COURT: Mr. Jonathan Escoto-Lugo.
>DEFENDANT ESCOTO-LUGO: Yes, sir.

*Id.* at 22-23. Thus, Mr. Escoto-Lugo confirmed his understanding as to the charge that he was pleading guilty to. Likewise, the Court asked counsel as to the Petitioner's competence to enter a guilty plea as follows:

>THE COURT: All right. Gentlemen, this is a felony which is and constitutes a serious crime. We will proceed to take your plea as to the charges that have been filed against you.
>[ . . . ]
>THE COURT: Mr. Raymond Rivera [Defense counsel], sir, do you have a statement to make to the Court regarding your client's competence to make a knowing, voluntary and willful plea? Mr. Rivera.
>MR. RIVERA: No, Your Honor. I harbor no doubt that my client is competent to make a plea. And this opinion has been formed through multiple meetings that I have held with him discussing the charges and explaining to him the way our legal system works.

*Id.* at 23-24. The Court further authenticated the initials and signature of Mr. Escoto-Lugo in the plea agreement as follows,

>THE COURT: Okay. So then we go to Mr. Jonathan Escoto-Lugo. Sir, are those your initials and your signatures, including the plea agreement and which includes the Government's version of facts and a separate document entitled plea supplement.
>DEFENDANT ESCOTO-LUGO: Yes, sir.

THE COURT: Thank you.

*Id.* at 34. As several defendants, including the Petitioner, were going to make safety valves in the criminal case, the Court oriented them as to the requirements and repercussions of the safety valve and the elements that made them eligible for said reduction in sentence,

> THE COURT: All of you. All of you, because I think all of you are about to make a safety valve. You are all facing a statutory minimum of ten years. Because you have made the representation that you have no criminal record, that there were no weapons, that this is your first violation, you qualify for the safety valve. But in order to jump and make the safety valve -- This is critical. Hear it clearly. -you have to state the truth. You cannot understate liability. You cannot overstate what somebody did in this case. You cannot hide names or who they are because if you do the United States could later, later, after it has given you the safety valve, they could file a motion that you were not truthful. Truthful is saying absolutely all the truth that you are being asked. If you don't know, say I don't know. But if they find out later that you knew, you're in trouble. So, this is not the time to be quivering, not the time to hide, not the time to invent. It is absolutely the truth because you're changing from 68 to 120. In order for you to come down from 120 to 68, or whatever the amount is, you have to be truthful.
> Do you all understand?
> THE INTERPRETER: Yes, sir.
> THE COURT: Okay. Hold it. That was Mr. Domingo Lima-Batista, Mr. Jonathan Escoto-Lugo -- he said yes; right?
> MR. RIVERA: Yes, Your Honor.
> [ . . . ]
> THE COURT: All right. So you all understand that you have a guideline. But this is a case of a statutory minimum term. Do you understand that?
> [ . . . ]
> DEFENDANT ESCOTO-LUGO: Yes, sir.

*Id.* at 37-38. Likewise, the Petitioner was advised that he would be deported upon serving his sentence,

> THE COURT: Okay. All right. And you're also, all of you, are going to be deported. And all of you know that you are under supervised release for a period of five years. Supervised release means only one thing for you, that you can never return to the United States. If you return to the United States, you're returning illegally because you will be -- and I am going to inform you, and I'm doing so now, you will be informed that you cannot enter into the United States unless you have a permit, a specific permit, not a mere visa, and you have to advise prior thereto the

> United States Probation Office that you intend to come in. And if you do that, you're not going to be authorized. So a mere visa will not get you in. You have to advise the immigration authorities of the United States that you are about to enter the United States. Do you all understand that?
> [ . . . ]
> THE COURT: Mr. Escoto-Lugo.
> DEFENDANT ESCOTO-LUGO: Yes, sir.

*Id.* at 40. During the change of plea hearing, the Petitioner was also advised that he was subject to a sentence of a "minimum statutory term of [] 120 months, and [] ha[d] a guideline computation that leads to 63 to 78 months, and he [would] receive 63 to 78 months if he makes the safety valve." *Id.* at 42. In turn, the Court inquired Mr. Escoto-Lugo as to the voluntariness of his guilty plea,

> THE COURT: So now I go to Jonathan Escoto-Lugo. Are those the terms of your plea agreement with the Government as you understand them, those stated by Mr. Rivera?
> DEFENDANT ESCOTO-LUGO: Yes, sir.
> THE COURT: Has anyone made any other or different promise or assurance to you of any kind in an effort to induce you to enter into a plea of guilty in this case?
> DEFENDANT ESCOTO-LUGO: No, sir.
> THE COURT: Have you been threatened and/or coerced by your -- by any co-defendant? By your lawyer?
> DEFENDANT ESCOTO-LUGO: No, sir.
> THE COURT: By any family member? Or by any government official, including any AUSA or any government official?
> DEFENDANT ESCOTO-LUGO: No.
> THE COURT: Thank you.

*Id.* at 46. The Petitioner was further advised that the Court need not to abide by the agreements set forth in the Plea Agreement and could potentially sentence him with a deviation either higher or lower than the proposed sentencing guideline.[2] The Court further confirmed that the

---

[2] THE COURT: Do you understand, all of you, that the Court is not signing this document? I don't have to sentence you neither to a lower end of the guideline, <u>and I have the ability and the power to go higher or lower depending upon what I receive in the pre-sentence report as to each and every one. Do you understand that []?</u> (Emphasis ours).
[ . . . ]

13

Petitioner understood that if his plea was accepted <u>he would be adjudged guilty of that offense and he would not be able to withdraw the plea agreement</u>. *Id.* at 48. Most critical, Mr. Escoto-Lugo declared under oath that he understood the waiver of appeal that he signed as part of the Plea Agreement,

> THE COURT: Now, listen to this carefully. Do you understand that you have all signed a waiver to appeal the sentence in your plea agreement wherein you are waiving your right to a trial by jury? Should the Court sentence you pursuant to that agreement, you will not be able to appeal the case. Now, the first three of you, Domingo Lima-Batista, Jonathan Escoto-Lugo, and Bienvenido Ozuna, if you don't make the safety valve, you're facing a ten-year minimum sentence. If the Court sentences you to ten years, you can't appeal. Do you understand that, sir?
> [ . . . ]
> THE COURT: Mr. Jonathan Escoto-Lugo.
> DEFENDANT ESCOTO-LUGO: Yes, sir.

*Id.* at 55-56. The Court went further by explaining to the Petitioner that if he made a safety valve and the Court sentenced him to 63 to 78 months he could not appeal. Mr. Escoto-Lugo responded under oath, "I understand." *Id.* at 56. However, the Court advised and the Petitioner understood that he "can always appeal [his] sentence, [ . . . ] except if the Court sentences [him] to what [he] specifically agreed." *Id.* at 59. Mr. Escoto-Lugo was further advised as to his waiver of trial,

> THE COURT: Now, gentlemen, by entering a guilty plea today, if the Court accepts that plea, there will be no trial and you would have waived or given up your right to a trial, as well as all those rights associated with a trial as I just described them. Do you understand that [ . . . ]
> THE COURT: Jonathan Escoto-Lugo.
> DEFENDANT ESCOTO-LUGO: Yes, sir.

*Id.* at 66. As a result of all the questions posted by the Court and the Petitioner's answers, the Court found that his plea constituted "a knowing and voluntary plea supported by an

---

DEFENDANT ESCOTO-LUGO: Yes, sir. Correct. *Id.* at 48.

independent basis of fact containing all the essential elements of the offense" and therefore accepted Mr. Escoto-Lugo's guilty plea. *Id.* at 75.

Although recommendations set forth in a Plea Agreement are advisory in nature and the Court is not bound to its terms, the Court evaluated and adopted the recommendation provided by the parties in the Plea Agreement while also applying a safety valve that accordingly resulted in a sentence of 63 months of imprisonment. *See* Docket Nos. 349 & 350 in Related Criminal Case No. 15-113 (DRD). Thus, the Court is forced to conclude that the Petitioner was well informed by the *Plea Agreement* and the Court that by pleading guilty he became potentially exposed to a sentence of 120 months of imprisonment as to Count Two and ultimately, a downward deviation from that term as low as 63 months should be applied should he comply with the safety valve.

The Petitioner's contention that counsel was ineffective as he did not file a Notice of Appeal is unpersuasive. The Petitioner was sentenced according to the terms set forth in the Plea Agreement and as he complied with a safety valve, benefited from a reduction of almost half the applicable guideline, to a total of 63 months of imprisonment. The Petitioner expressed satisfaction with counsel's representation. He also expressed that he entered into a plea agreement knowingly and voluntarily. He was not coerced to enter a plea and there were no changes between the agreements between the parties and the Court's ultimate decision.

The Court finds that Petitioner failed to establish that not filing a notice of appeal would result in a miscarriage of justice. The Court confirmed that the initials in every page of the Plea and Forfeiture Agreement as well as the signature, were in fact, that of the Petitioner. The Court also confirmed that counsel Rivera properly oriented him as to the rights and consequences of entering a plea agreement and the consequences of a waiver of appeal. It seems totally

unreasonable to change his mind when the matters have gone exactly as accorded. Hence, the Court finds that the arguments set forth by the Petitioner are insufficient to demonstrate that (1) counsel's performance fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. *Padilla v. Kentucky*, 559 U.S. 356, 366 (2010) (quoting *Strickland v. Washington,* 466, U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).

Lastly, there is a presumption that the legal representation of counsel was reasonable and effective. Mr. Escoto-Lugo's claim that he requested the filing of a Notice of Appeal and counsel failed to do so without evidence is insufficient to demonstrate the alleged ineffective assistance of counsel. The Petitioner has failed to comply with the "heavy burden" as to a cause of action merely stating that counsel failed to file a notice of appeal as he was properly advised that he was subject to statutory minimum of 120 months of imprisonment subject to a reduction to 63 months upon compliance with the safety valve. *See Angencourt v. United States*, 78 F.3d. 14, 16 (1st Cir. 1996); *see also Lema v. United States*, 987 F.2d. 48, 51 (1st Cir. 1993). The Court finds no error under the standard of *Strickland*, 466 U.S. 668 (1984). Further, counsel is not necessarily required to file an appeal because the defendant wishes to file an appeal. *Flores Ortega*, 328 U.S. at 477-478. There is no practical reason to consider a deviation of ethics from counsel. The allegations of the Petitioner are "self-serving" at best as they lack a logical explanation or evidence as to the actual request to file an appeal upon a substantially lowered sentence.[3]

---

[3] The Court notes that the Petitioner accepted in the Government's version of facts that he participated as a member of eleven crewmembers that participated in the conspiracy to import into the United States 989.4 micrograms of cocaine No legitimate cargo was found on board the vessel. *See* Related Criminal Case No. 15-113 (DRD), Docket No. 251 at 10-11.

Thus, the § 2255 Petition for ineffective assistance of counsel due to counsel's alleged failure to file a notice of appeal is insufficient and therefore, **DENIED**.

### III. CONCLUSION

For the reasons elucidated above, the Court hereby **DENIES** Petitioner Jonathan Escoto Lugo's *Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody* (Docket No. 1)**.** Judgment of dismissal is to be entered accordingly.

It is further ordered that no certificate of appealability be issued in the event that the petitioner files a notice of appeal as there exists no substantial showing of the denial of a constitutional or statutory right within the meaning of 28 U.S.C. § 2253(c).

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 23rd day of September, 2020.

*S/ DANIEL R. DOMINGUEZ*
Daniel R. Dominguez
United States District Judge